## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BLAIR POINDEXTER**                                **CIVIL ACTION**

**VERSUS**                                          **NO.  10-3365**

**STEVE RADER, WARDEN**                             **SECTION "D"(2)**


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Blair Poindexter, is incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.[2]  On December 14, 2006, Poindexter was charged by bill of information in Lafourche Parish with possession with intent to distribute cocaine.[3]  The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> At sometime around noon on November 14, 2006, Detective T.J. Crochet of the Thibodaux Police Department, Narcotics Bureau, was parked in a lot on the corner of Plantation Road and Canal Boulevard in Thibodaux, Louisiana, when he observed an Oldsmobile Cutlass pass by. Upon noticing that the passenger was not wearing a safety belt, Detective Crochet decided to follow the vehicle.  After observing the driver perform two turns without using a signal, Detective Crochet initiated a traffic stop. The defendant was the driver, and his brother, Percy Poindexter, was seated on the passenger side of the vehicle. As the defendant drove the vehicle onto the shoulder of the roadway in response to the traffic stop, Detective Crochet, from a position approximately two to three feet behind the vehicle, observed the defendant move in a leaning motion towards the passenger seat, and the defendant tossed an object out of the passenger side window of the vehicle. When the discarded object made contact with the ground, several smaller, light-colored objects fell from it.  Because he was alone, Detective Crochet did not immediately retrieve the discarded objects. Instead, he acted as if he was not aware that anything had been discarded. He approached the vehicle and made contact with the driver of the vehicle. When asked to identify himself, the defendant indicated that he was "Johnny Poindexter."  Detective Crochet continued to converse with the defendant while stalling for backup to arrive.  At all times during the encounter, Detective Crochet maintained visual contact with the discarded object.

_____

[2]Rec. Doc. No. 2.

[3]St. Rec. Vol. 1 of 3, Bill of Information, 12/14/06.

2

Once the backup officer arrived, Detective Crochet went over and collected the object, a small sandwich "baggie" with three pieces of suspected crack cocaine inside. Five additional pieces of suspected crack cocaine were also collected from the ground around the baggie. The defendant and Percy Poindexter were arrested and transported to the Thibodaux Police Department. Scientific analysis of the substances recovered revealed the presence of cocaine.

State v. Poindexter, 978 So.2d 1260 (La. App. 1st Cir. 2008) (Table); State Record Volume 3 of 3, Louisiana First Circuit Court of Appeal Opinion, 2007-KA-1516, pp. 2-3, March 26, 2008.

Poindexter was tried before a jury on May 22 and 23, 2007, and was found guilty as charged.[4] On June 14, 2007, the state trial court sentenced Poindexter to serve 15 years in prison.[5] The court also denied the motion to reconsider the sentence.[6]

On direct appeal, Poindexter's appointed counsel argued that the state trial court erred in denying the motion for mistrial after the State elicited testimony insinuating that Poindexter had a prior criminal history.[7] On March 26, 2008, the Louisiana First Circuit Court of Appeal affirmed the conviction, finding the claim to be without merit.[8]

---

[4]St. Rec. Vol. 1 of 5, Verdict of the Jury, 5/23/07; Trial Transcript, 5/22/07; St. Rec. Vol. 2 of 3, Trial Transcript (continued), 5/22/07; Trial Transcript, 5/23/07.

[5]St. Rec. Vol. 2 of 5, Sentencing Transcript, 6/14/07.

[6]Id.; St. Rec. Vol. 2 of 3, Motion to Reconsider Sentence, 6/14/07; Trial Court Order, 6/14/07.

[7]St. Rec. Vol. 3 of 3, Appeal Brief, 2007-KA-1516, 11/28/07.

[8]State v. Poindexter, 978 So.2d at 1260; St. Rec. Vol. 3 of 3, 1st Cir. Opinion, 2007-KA-1516, 3/26/08.

On November 21, 2008, the Louisiana Supreme Court denied Poindexter's subsequent writ application to that court without stated reasons.[9] Poindexter's conviction became final 90 days later, on February 19, 2009, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

In the meantime, however, on October 16, 2008, Poindexter submitted an application for post-conviction relief to the state trial court asserting five grounds for relief, all alleging ineffective assistance of counsel in that counsel failed to (1) enforce his speedy trial rights; (2) investigate the State's case at the motion to suppress; (3) introduce mitigating evidence, including ineffectiveness during disposition of the motion to produce the confidential informant; (4) inspect discovery with the petitioner; and (5) conduct meaningful voir dire.[10]  The state trial court denied relief, finding the claims without merit.[11]

---

[9]State v. Poindexter, 996 So.2d 1105 (La. 2008); St. Rec. Vol. 2 of 3, La. S. Ct. Order, 2008-KO-0937, 11/21/08; La. S. Ct. Letter, 2008-KO-0937, 5/5/08 (showing postal meter of 4/16/08).

[10]St. Rec. Vol. 2 of 3, Uniform Application for Post-Conviction Relief, 10/28/08 (dated 10/16/08).

[11]St. Rec. Vol. 3 of 3, Reasons for Judgment, 3/23/09; Trial Court Judgment, 3/23/09.

Poindexter sought review in the Louisiana First Circuit, and the writ application was denied without stated reasons on August 17, 2009.[12]  The Louisiana Supreme Court subsequently denied Poindexter's related writ application without reasons on August 18, 2010.[13]

II.    FEDERAL HABEAS PETITION

On October 8, 2010, the clerk of this court filed Poindexter's petition for federal habeas corpus relief in which he asserted five grounds for relief, all alleging ineffective assistance of counsel including that counsel failed to (1) enforce his speedy trial rights; (2) investigate the State's case at the motion to suppress; (3) introduce mitigating evidence, including ineffectiveness during disposition of the motion to produce the confidential informant; (4) inspect discovery with the petitioner; and (5) conduct meaningful voir dire.[14]

---

[12]St. Rec. Vol. 3 of 5, 1st Cir. Order, 2009-KW-0998, 8/17/09. The state record does not contain a copy of this writ application.

[13]State ex rel. Poindexter v. State, 42 So.3d 394 (La. 2010); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2009-KH-2044, 8/18/10; La. S. Ct. Letter, 2009-KH-2044, 9/21/09 (showing postal meter of 9/15/09). The state record does not contain a copy of this writ application. While that writ application was pending, the state trial court denied Poindexter's motion to have his sentence run concurrently, apparently on the erroneous assumption that two sentences had been imposed in this case.  St. Rec. Vol. 3 of 3, Motion for Concurrent Sentence, 12/9/09 (dated 11/12/09); Trial Court Order, 12/9/09.

[14]Rec. Doc. No. 2.

The State filed an answer and memorandum in opposition to Poindexter's petition arguing that the claims are without merit.[15]

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[16] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Poindexter's petition, which, for reasons discussed below, is deemed filed in this federal court on September 3, 2010.[17]

The threshold questions in habeas review under the AEDPA are whether the petition is timely filed and whether the claims raised by the petitioner were adjudicated

---

[15]Rec. Doc. No. 9.

[16]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[17]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Poindexter's petition was filed by the clerk of this court on October 8, 2010, when pauper status was granted.  Poindexter's signature on the petition is dated September 3, 2010.  This is the earliest date on which he could have delivered the set of pleadings to prison officials for mailing.

on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State concedes, and I find, that the federal petition was timely filed.  Poindexter's claims are exhausted and none are in procedural default.

IV.    STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

7

court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.   The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.    INEFFECTIVE ASSISTANCE OF COUNSEL

Poindexter alleges that his counsel provided ineffective assistance before and during trial in failing to (a) enforce his speedy trial rights, (b) investigate, (c) introduce mitigating evidence, (d) inspect discovery, and (e) conduct meaningful voir dire. Poindexter asserted these same arguments in his state application for post-conviction relief, which was denied as meritless by the state trial court, which held that Poindexter had failed to prove any deficiency in counsel's performance or resulting prejudice.  This was the last opinion on the issue by the state courts.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance

of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a

federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.  Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore v. Johnson, 194 F.3d at 591.  The

11

burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient.  Id.

A.    SPEEDY TRIAL RIGHTS

Poindexter argues that his counsel failed to move for dismissal of the charges after the speedy trial deadline had passed.  He alleges that his original appointed counsel filed a motion for a speedy trial that was granted and a trial date was set for March 26, 2007. He asserts that after that attorney withdrew, his newly appointed counsel failed to assure that the trial date was honored, and instead the trial occurred two months later, on May 22 and 23, 2007.  Poindexter argues that his trial counsel should have moved for dismissal of the charges, since the State failed to move for a continuance or adhere to the speedy trial deadline.

The state trial court resolved this claim by finding that, even if counsel had followed up on the speedy trial issue, the failure to commence the trial timely would not have resulted in dismissal of the charges.  Instead, under La. Code Crim. P. art. 701, it only would have affected Poindexter's bail obligation.

Poindexter faults his trial attorneys for failing to enforce his speedy trial rights, which had been the subject of a motion filed by his prior counsel.  The right to a speedy trial is guaranteed by the Sixth Amendment and applies to state criminal proceedings through the Fourteenth Amendment.  Goodrum v. Quarterman, 547 F.3d 249, 257 (5th

Cir. 2008).  When evaluating a speedy trial claim, the court should consider several factors, including (1) length of the delay, (2) the reason for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant.  Barker v. Wingo, 407 U.S. 514, 530 (1972).  No single factor is necessary or sufficient to find a speedy trial violation.  Goodrum, 547 F.3d at 257.  If the first three factors weigh heavily in a defendant's favor, prejudice may be "presumed."  See Barker, 407 U.S. at 521; see also United States v. Serna-Villarreal, 352 F.3d 225, 231 (5th Cir. 2003).  The United States Court of Appeals for the Fifth Circuit has held, however, that a delay of one year after indictment is a presumptively prejudicial delay that triggers Barker speedy trial analysis. United States v. Lucien, 61 F.3d 366, 372 (5th Cir. 1995); Robinson v. Whitley, 2 F.3d 562, 568 (5th Cir. 1993).

The record before this court does not contain a motion for speedy trial or an order setting trial on March 26, 2007.  Nevertheless, the record shows that Poindexter was arrested on November 14, 2006, he was formally charged on December 14, 2006, and was tried on May 22 and 23, 2007.  Thus, he was actually brought to trial only six months after his arrest.  There is no presumption of prejudice under Barker.

Furthermore, the specific delay about which Poindexter actually complains was the two month period between the March 26, 2007, and his actual trial two months later

13

on May 22 and 23, 2007.  This minimal delay also does not equate to a presumption of prejudice.

The record fails to disclose any harm or prejudice to Poindexter during these short delays in bringing him to trial.  In assessing prejudice, the court must consider such concerns as oppressive pre-trial incarceration, the defendant's anxiety and concern and the possibility that the defense will be impaired.  Barker, 407 U.S. at 532.  The record in this case raises none of these concerns.  Instead, the record reflects that Poindexter's newly appointed counsel were able to prepare for trial, pursue a hearing on the motion to suppress and file a motion for disclosure of the confidential informant.  Thus, the minimal delay at issue benefitted Poindexter in those respects.

For these reasons, the record does not demonstrate that Poindexter suffered any prejudice from delay.  His suggestion that counsel was ineffective or deficient in failing to protect his speedy trial rights is refuted by the record.

Even assuming, without concluding, that counsel's performance fell below the reasonable performance standard, Poindexter does not allege and the record does not demonstrate any resulting prejudice.  As noted by the state trial court, under La. Code Crim. P. art 701, Poindexter may have been entitled to release without bail, unless good cause for the delay was shown.  There was no provision under Louisiana law for the charges to be dismissed, as Poindexter suggests.  Even under federal law, which provides

14

for dismissal of a bill of information in the event of undue trial delay, such a dismissal can be without prejudice to allow the government to refile the charges.  See United States v. Blevins, 142 F.3d 223, 225 (5th Cir. 1998) ("A district court is not required to dismiss an indictment with prejudice for every violation of the Speedy Trial Act."); United States v. Melguizo, 824 F.2d 370, 372 & n.11 (5th Cir. 1987) ("[T]he decision whether to dismiss a complaint under the Speedy Trial Act with or without prejudice  is entrusted to the sound discretion of the district judge and . . . no preference is accorded to either kind of dismissal.")  Poindexter has made no showing of prejudice.

For the foregoing reasons, the state courts' denial of relief on this issue was not contrary to, or an unreasonable application of Strickland.  Poindexter is not entitled to relief on this claim.

B.    INVESTIGATION FOR MOTION TO SUPPRESS

Poindexter argues that, at the beginning of the suppression hearing, his counsel improvidently acquiesced to the State's contention that the motion to disclose the confidential informant had been resolved.  He argues that, as a result, the trial court would not allow counsel to question the officer at the suppression hearing about the veracity of the confidential informant.  He also complains that counsel failed to object to that ruling.

Poindexter further contends that counsel failed adequately to test the officer's statements at the suppression hearing.  He also argues that counsel failed to recognize at the hearing that there was no mention of his Miranda warnings having been given before the officer spoke with him, knowing that he planned to arrest him.  As a consequence, he suggests that counsel were ineffective in their failure to succeed on the motion to suppress, in light of the testimony that the officers restrained him based on tenuous information from a confidential informant before the drugs were actually located.

Review of the suppression hearing transcript reflects that Poindexter's counsel diligently challenged the testimony of Detective Crochet with thorough cross-examination.  Contrary to Poindexter's claims, counsel questioned Crochet about the tinting on the car windows and his alleged ability to see into the car.[18]  Counsel also questioned Crochet about information received from the confidential informant and about the alleged traffic-basis for the initial stop.[19]

Counsel thoroughly challenged each aspect of the stop and arrest and the investigation leading to both.  This was the focus of the motion.[20]  The motion did not take issue with whether Poindexter was read his Miranda warnings.  There was no basis

---

[18]St. Rec. Vol. 2 of 3, Motion Hearing Transcript, p. 11, 5/10/07.

[19]Id., pp. 12-13.

[20]Id., p. 20.

16

for counsel to have elicited questions about <u>Miranda</u> warnings because they in fact had been read to him.[21]  The fact that counsel's efforts were not successful does not render their performance unconstitutionally deficient.  <u>See</u> <u>Martinez v. Dretke</u>, 99 Fed. Appx. 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Strickland</u>, 466 U.S. at 689 (citations omitted).  Contrary to Poindexter's arguments, success is not the standard by which this court must evaluate his counsel's performance.

The state trial court sustained the State's objection to defense counsel's question about the reliability of the informant.[22]  Contrary to Poindexter's argument, however, the ruling was not based on the prior resolution of the motion to disclose.  Instead, the court's ruling was based on the scope of the motion to suppress and the irrelevance of the informant's reliability at that stage of the proceeding.[23]

Poindexter also complains that counsel should have objected to this ruling. However, he does not suggest how this ruling was in any way in error, and no error in

---

[21]Poindexter was in fact read his <u>Miranda</u> warnings prior to his arrest and before he was questioned about the crack.  St. Rec. Vol. 2 of 3, Trial Transcript (continued), pp. 190-92, 5/22/07.

[22]<u>Id</u>., p. 16.

[23]<u>Id</u>.

the ruling is readily apparent.  Counsel's failure to make a frivolous or baseless objection is not deficient performance falling below an objective standard of reasonableness or effectiveness.  Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998).

Poindexter has not demonstrated that counsel acted deficiently or prejudicially at the motion to suppress hearing.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of Strickland.  Poindexter is not entitled to relief on this claim.

C.      MITIGATING EVIDENCE AND THE CONFIDENTIAL INFORMANT MOTION

1.      MOTION TO PRODUCE CONFIDENTIAL INFORMANT

Construed broadly, Poindexter's petition appears to argue that his counsel failed adequately to challenge the testimony of the arresting officer in not objecting to the State's representation that the motion to disclose had been resolved.  He claims that counsel, therefore, allowed the matter to proceed without adequate information about the informant's reliability.

As noted above, the motion hearing transcript reflects that the motion concerning the confidential informant was apparently resolved between counsel and had been withdrawn prior to the motion to suppress hearing.[24]  The record does not contain further explanation of this issue.  Nevertheless, according to Detective Crochet's testimony at

_____

[24]Id., p. 3.

18

the suppression hearing and trial, the informant advised that a person named "Bird" was standing on the corner of Plantation and Midland selling drugs.[25]  The detective testified that he was not looking for Poindexter's vehicle; he was looking for the individual described to him.[26]  He happened upon Poindexter only because of the traffic violations he witnessed, including that the passenger was not wearing a seatbelt and the multiple turns made without a signal.[27]

Poindexter has shown no relevance of these matters to the motion to disclose or how its resolution in any way prejudiced the outcome of his trial.  I can conceive of none. Without such a showing, he has failed to meet the Strickland standard concerning his counsel's performance.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of Strickland.  Poindexter is not entitled to relief on this claim.

2.   MITIGATING EVIDENCE

Poindexter further argues that counsel failed to present mitigating evidence, such as pictures of the car's tinted windows, to defeat the charges.  He also claims that counsel erred in failing to call as a witness Percy Poindexter, the possible owner of the drugs that

---

[25]Id., p. 12.

[26]Id.; St. Rec. Vol. 2 of 3, Trial Transcript (continued), pp. 160-161, 5/22/07.

[27]Id.; St. Rec. Vol. 2 of 3, Trial Transcript (continued), pp. 160-161, 5/22/07.

were thrown from the car.  He alleges that these errors led to the denial of his motion to suppress.  He also complains that counsel failed to have the charges down-graded to a lesser offense, because there was no evidence that the area where Poindexter was apprehended was known for drug transactions that would have supported the distribution aspect of the charge.

As noted above, counsel in fact questioned Detective Crochet at the hearing on the motion to suppress regarding the tinting on the windows and his visibility into the car.[28] No matter how many different ways Poindexter presents this same argument, the fact that counsel's efforts to suppress the evidence were not successful does not render their performance unconstitutionally deficient.  See Martinez, 99 Fed. Appx. at 543.

Furthermore, according to the testimony and evidence, the distribution charge was based on the amount (8 rocks) and weight of the crack seized (1.8 grams), not whether the area was known for drug dealing.[29]  Under these circumstances, counsel did not provide constitutionally ineffective performance in failing to propose "mitigating" evidence regarding drug sales in the neighborhood.

In addition, Poindexter has not demonstrated that counsel was deficient in his failure to call Percy Poindexter as a witness.  "'Complaints of uncalled witnesses are not

[28]St. Rec. Vol. 2 of 3, Motion Hearing Transcript, p. 11, 5/10/07.

[29]St. Rec. Vol. 2 of 3, Trial Transcript (continued), pp. 241, 247, 250, 266-269, 5/22/07.

favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)).  "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'"  Williams v. Cockrell, 31 Fed. Appx. 832 (5th Cir. 2002) (quoting Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997)).  In this case, Percy Poindexter had already denied ownership of the cocaine and was not charged.  There is no indication in the record, and Poindexter has presented no evidence, such as Percy's affidavit, to establish that Percy would have testified in his favor or stated that he in fact was the owner of the drugs.  Counsel's decision to not call Percy Poindexter does not fall below constitutional standards for reasonable performance of counsel.

To the extent Poindexter criticizes counsel's performance for failing to negotiate a plea agreement or lesser charges, he has failed to demonstrate deficient performance. Poindexter has consistently argued from the time of his arrest through this proceeding that Percy owned the crack and threw it out the window.  While he now seems to suggest that he would have acquiesced in some way to a possession charge, or other lesser offense, rather than go to trial, "courts have been skeptical of accepting a defendant's

self-serving, post-conviction statements that he would have pleaded guilty if properly advised of the consequences by his attorney." Gluzman v. United States, 124 F. Supp.2d 171, 177 (S.D.N.Y.2000) (citing Johnson v. Duckworth, 793 F.2d 898, 902 n. 3 (7th Cir. 1986)); Lerma-Castillo v. United States, No. 08-CV-106, 2009 WL 2914235, at *6 (W.D. Tex. Sep. 8, 2009).   Given Poindexter's claims of innocence, counsel's decision to proceed to trial rather than encourage a guilty plea was not advice below constitutional standards.  Lerma-Castillo, 2009 WL 2914235, at * 6 (citing Gluzman, 124 F. Supp.2d at 177, 178 (finding no ineffective assistance of counsel when petitioner's counsel failed to negotiate guilty plea in light of petitioner's persistent claims of innocence); U.S. ex. rel. Tillman v. Alldredge, 350 F. Supp. 189, 195-96 (E.D. Pa. 1972) ("I am not prepared to hold that an attorney who fails to explore the possibility of a plea bargain on behalf of a client who insists that he is innocent, has represented his client ineffectively."); Bicaksiz v. United States, 234 F. Supp.2d (E.D.N.Y. 2002) (holding defendant's insistence upon his innocence a relevant factor in evaluating whether defendant was prejudiced by counsel's failure to obtain a plea bargain)).

For all of the foregoing reasons, Poindexter has not demonstrated that counsel's actions fell below constitutional standards in connection with the presentation of evidence at trial and the defense of the charged offense.  The state courts' denial of relief

on this issue was not contrary to, or an unreasonable application of <u>Strickland</u>. Poindexter is not entitled to relief on this claim.

D.    <u>INSPECTION OF THE DISCOVERY</u>

Poindexter complains that his counsel did not review discovery, defense strategy and evidence with him prior to trial.  He claims that he tried to provide information, such as pictures of the tinted car windows, and other defense strategy suggestions to counsel, but that counsel failed to meet with him to discuss his suggestions, which he argues denied him an adequate opportunity to participate in his own defense.

The Constitution does not require that trial decisions, even those affecting a defendant's constitutional rights, must be made by the defendant personally rather than by his counsel.  <u>Rault v. Louisiana</u>, 772 F.2d 117, 132 (5th Cir. 1985) (citing <u>Winters v. Cook</u>, 489 F.2d 174, 176-77 (5th Cir. 1973) (some strategic decisions which entail the waiver of a constitutional right may be made by counsel without consultation with the accused, citing <u>Henry v. Mississippi</u>, 379 U.S. 443 (1965)).  "[C]ounsel has wide latitude in deciding how best to represent a client."  <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6 (2003).  A defendant's desire to have a specific defense theory presented does not amount to ineffective assistance of counsel on federal habeas review. <u>Johnson v. Cockrell</u>, 301 F.3d 234, 239 (5th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 689)

("[C]ourts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'").

Poindexter has failed to point to a deficiency in counsel's handling of the trial decisions and defense strategies that might be sufficient to support federal habeas relief. As discussed above, counsel acted within the wide range of reasonable performance in both challenging the evidence and presenting a defense. Counsel in fact questioned the detective thoroughly about his ability to see through the tinted windows of the car, about his certainty with regard to the movement he claimed to have seen and about which person threw the package out of the passenger window. Poindexter's contentions to the contrary are baseless and refuted by the record.

For these reasons, Poindexter has not demonstrated that counsel's actions fell below constitutional standards. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, <u>Strickland</u>. Poindexter is not entitled to relief on this claim.

E.      <u>CONDUCT OF MEANINGFUL VOIR DIRE</u>

1.      <u>VOIR DIRE</u>

Poindexter alleges that counsel was ineffective in failing to challenge a potential juror, Mary Elizabeth Hebert, who admitted having been a victim of a crime. Counsel also heard the statement that panelist Jeremy Pecanty had a cousin who was an assistant

district attorney and panelist Julie Knight was familiar with the attorneys.  He complains that counsel failed to challenge or strike these particular individuals, despite the fact that most of the panelists were related in some way to police or prosecutors.  He also suggests that the State made every effort to strike African-Americans from the panel.  He complains that his counsel failed to object to the State's action.  He also contends that his counsel's voir dire questions were overly general, impersonal, and not designed to reveal any relevant information.  He argues that, as a result of these errors, his counsel failed adequately to defend the case.

The Sixth and Fourteenth Amendments guarantee the right to a fair trial, which includes the right to an impartial jury.  Morgan v. Illinois, 504 U.S. 719, 727 (1992); Ross v. Oklahoma, 487 U.S. 81 (1988); Miniel v. Cockrell, 339 F.3d 331, 338 (5th Cir. 2003).  In the context of counsel's alleged failure to strike a partial juror, a habeas court must first evaluate whether the juror at issue was actually biased.  Virgil v. Dretke, 446 F.3d 598, 608-10 (5th Cir. 2006).

The issue of juror bias is a factual finding.  Id., at 610 n.52 (citing Patton v. Yount, 467 U.S. 1025 (1984)).  Under AEDPA standards, the state court's factual findings are given a presumption of correctness that may only be overcome "by clear and convincing standards."  28 U.S.C. § 2254(e)(1).

A bias determination centers on a juror's own indication that she has "such fixed opinions that [she] could not judge impartially respondent's guilt," Patton, 467 U.S. at 1035, and whether "her views would prevent or substantially impair the performance of . . . her duties as a juror in accordance with his or her instructions and oath," United States v. Scott, 159 F.3d 916, 925-26 (5th Cir. 1998).

As noted in this case by the state trial court, neither Jeremy Pecanty nor Julie Knight were chosen as jurors to sit at the trial.  Poindexter, therefore, cannot show any prejudice arising from counsel's voir dire decisions with regard to these persons.  In fact, it was defense counsel who exercised a peremptory challenge to strike Knight from the jury.[30]  Pecanty was back-stricken by the State because of his work conflicts.[31] Poindexter has no basis for any claim regarding these panelists.

With regard to Hebert, who eventually became the jury foreperson, Poindexter has failed to allege any basis for her to have been stricken by counsel or to demonstrate that she was biased or otherwise unfit to sit on the jury.  Hebert indicated to the court that she understood the defendant's right to remain silent and not to testify.[32]  She advised the court that she had a cousin in the state police, another cousin who was an officer in

_____

[30]St. Rec. Vol. 1 of 3, Trial Transcript, p. 130, 5/22/07

[31]Id., pp. 130, 132-33.

[32]Id., pp. 99-100

Assumption Parish and an uncle who was the former police chief in Thibodaux.[33]  When asked by the court, she indicated that this would not have any effect on her ability to sit impartially in this case.[34]

During questioning by the prosecution, Hebert also indicated that she had a cousin who was involved in a different state with drug charges.[35]  When asked, she indicated that she had no resentment based on his treatment.[36]  After the panel was asked if anyone had been a victim of a crime, Hebert also stated that she had been attacked by a white male at the age of 14.[37]  She reported it to her uncle, the police chief, but the attacker was never found.[38]   She stated that she had no resentment because of that experience.[39]

There is absolutely nothing in this juror's statements during voir dire that would indicate any bias on her part as to Poindexter's guilt or that she would be substantially impaired in her performance as a juror.  Jurors are presumed to be impartial and, absent extraordinary circumstances, bias should not be imputed to jurors.  See Andrews v.

---

[33]Id., pp. 105-106.

[34]Id., pp. 106, 107.

[35]Id., p. 116.

[36]Id.

[37]Id., p. 118.

[38]Id., pp. 118-119.

[39]Id., p. 119.

Collins, 21 F.3d 612, 620 (5th Cir. 1994).  Without some showing of bias, there was no reason for counsel to exclude this person from the jury.

Furthermore, under Louisiana law, the mere relationship between a prospective juror and a law enforcement officer is not alone grounds to strike a juror.  State v. Kang, 859 So.2d 649, 652 (La. 2003).  The same is true under federal law; a petitioner cannot establish bias merely by demonstrating that a relationship existed between seated jurors and members of law enforcement.  Anthony v. Cain, No. 07-3233, 2009 WL 3564827, at *15 (E.D. La. Oct. 29, 2009) (citing United States v. Crooks, 83 F.3d 103, 107 & n.16 (5th Cir. 1996) (marriage to law enforcement official, without more, insufficient to constitute juror bias)).  Without such a showing, Poindexter has failed to demonstrate that his counsel's failure to strike any juror related to police officials fell below constitutional standards or prejudiced him through placement of a biased juror.

Poindexter also suggests that his counsel's voir dire was ineffective.  Between questioning by the court and the prosecutor, the jurors were asked about prior criminal involvement, familial relationships, time conflicts and a myriad of other topics designed to learn about the individual panelists.  After thorough questioning by the court and the prosecutor, defense counsel had an opportunity to address the panel.  Counsel noted "[a] lot of questions have already been asked, so there's not much that I can ask you, so I'll

28

be brief."[40]  He went on to ask the panelists if they would require the State to meet their burden of proof with specific reference to proof of possession.[41]

Counsel's statement during voir dire indicates that he was well aware of the thorough and pointed questions already asked by the court and the prosecutor.  He simply saw no need to be unnecessarily repetitive or lengthy.  A "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Richards v. Quarterman, 566 F.3d 553, 564 (5th Cir. 2009) (internal quotations and citations omitted).  An "attorney's actions during voir dire are considered to be a matter of trial strategy."  Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995).

Poindexter has not shown that counsel's decision to keep his voir dire examination brief was prejudicial.  Based on the questions already asked, counsel was clearly able to evaluate the jurors and soundly exercise his challenges.  With no showing of deficiency or prejudice, Poindexter has failed to meet the Strickland burden.

Finally, Poindexter suggests that counsel should have moved to dismiss the jury, because the State used its challenges to strike all African-American jurors.  He asserts that the removal of African-American jurors violated his constitutional rights, citing

---

[40]Id., p. 128.

[41]Id., pp. 128-129.

Batson v. Kentucky, 476 U.S. 79 (1986).  Poindexter did not directly raise a Batson

challenge in the state courts on direct appeal or on post-conviction review.

In Batson, the Supreme Court held that purposeful racial discrimination in the use

of peremptory strikes of prospective jurors violates the Equal Protection Clause.  In

evaluating whether a petitioner has established a Batson violation, a three-step analysis

is employed, with the first step requiring a petitioner to make a prima facie showing that

a peremptory challenge has been exercised on the basis of race.  Stevens v. Epps, 618

F.3d 489, 492 (5th Cir. 2010).

In the instant matter, Poindexter provides no evidence to support his allegation that

the State misused its peremptory strikes.  When this issue was submitted to the state trial

court on post-conviction review, the State provided copies of the juror questionnaires for

the two panels from which Poindexter's jury was chosen.[42]  None of the jurors indicated

themselves to be black or African-American.  This is true of the forms submitted by the

six panelists stricken by the State.[43]

As such, Poindexter has presented no evidence, and the record contains nothing,

to indicate that there was a basis for counsel to have urged a Batson challenge.  Green,

---

[42]St. Rec. Vol. 3 of 3, Answer to Application for Post-Conviction Relief, 1/16/09; Juror
Questionnaires (28 pages).

[43]Derrick Billiot indicated his race to be "I;" Chet Ordoyne, Lynn Hoggatt, Daniel Robicheaux,
and Jeremy Pecanty each indicated their race to be "W;" Tony Ordoyne indicated his race to be "C."

160 F.3d at 1037.  Accordingly, petitioner has clearly failed to satisfy his burden of proof under Strickland.  See Bell v. Director, TDCJ-CID, No. 3:03CV36, 2005 WL 2977771, at *6 (E.D. Tex. Nov. 2, 2005) (Claim that a juror was improperly struck "is a conclusory allegation ... insufficient to support a petition for a writ of habeas corpus."); Eastridge v. United States, 372 F. Supp.2d 26, 61 (D.D.C. 2005) ("Petitioners cannot establish improper application of peremptory challenges because they present no evidence of selective exclusion and cannot produce evidence of the racial composition of the venire.").

The state courts' denial of relief on these issues was not contrary to, or an unreasonable application of Strickland.  Poindexter is not entitled to relief on any of these claims.

2.    OTHER ALLEGED ERRORS

Poindexter adds claims, all of which were before the state courts, that his counsel also failed to object to the jury instructions regarding constructive possession, which he believes to have been a responsive verdict.  He argues that his counsel also did not object when the prosecutor called Poindexter a liar in front of the jury.  Poindexter further complains that counsel's closing argument did not adequately challenge the evidence. He also argues that his counsel was deficient in failing successfully to obtain a mistrial when the officer testified at trial that a parole officer identified Poindexter for him.

Poindexter further asserts that his appellate counsel was ineffective in failing to raise other issues on appeal, including excessive sentence, erroneous denial of the motion to suppress, the trial court's failure to require disclosure of the informant, and the trial court's failure to designate whether the sentence was to be served with or without benefits.

Poindexter's first contention, regarding the jury instruction on responsive verdicts, is misplaced. Constructive possession is not a responsive verdict. It is an explanation of the term "possession," which is an integral part of the possession with intent to distribute with which he was charged. See State v. Cummings, __ So.3d __, 2011 WL 228657, at *2-3 (La. App. 2d Cir. Jan. 26, 2011) (slip op.). Louisiana law does not require a person to be in actual physical possession of the drug. Id., at *3. A person not in physical possession of a drug may have constructive possession when the drug is under that person's dominion or control. Id., at *3; State v. Reyes, 726 So.2d 84, 88 (La. App. 5th Cir. 1998). It is this term, not a responsive verdict, that was discussed by the state court. Because the instruction and definition given by the state trial court were not erroneous, there was no basis for counsel to have entered an objection. See Green, 160 F.3d at 1037. Poindexter has failed to establish that counsel's performance was deficient in this regard.

32

Poindexter also argues that counsel should have objected when the prosecutor referred to him as a liar.  Improper jury argument by the State does not present a claim of constitutional magnitude in a federal habeas action, unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment.  Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988).  Due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir. 1987).  The prosecutor's remarks must be evaluated in the context of the entire trial.  Greer v. Miller, 483 U.S. 756, 765-66 (1987) (citing Darden, 477 U.S. at 179); Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985).  Thus, to obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks."  Jones, 864 F.2d at 356; Hogue v. Scott, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994).

During rebuttal argument, the prosecutor asked the jury to consider Poindexter's guilty state of mind, as evidenced by his lies to the detective, in support of the idea that

he was in constructive possession of the crack.[44]  Based on the evidence presented at trial, the prosecutor pointed out that Poindexter lied about his name to the detective when he was pulled over and he continued to lie about his identity when he was booked at the station.  He also pointed out that Poindexter at first lied about knowledge of the drugs, until he changed his story to blame the drugs on his brother Percy.

Poindexter does not deny that he made these statements and no evidence was presented to refute that his statements were made to the detective. Under these circumstances, there again was nothing to which counsel could object. See Green, 160 F.3d at 1037.  Furthermore, "a decision not to object to a closing argument is a matter of trial strategy." Drew v. Collins, 964 F.2d 411. 423 (5th Cir. 1992).   I find nothing so inappropriate in the State's closing argument that would meet the test for habeas relief applicable to improper prosecutorial argument.

Poindexter also complains that his counsel's closing argument did not adequately challenge the evidence.  As recently reiterated by the United States Supreme Court, to prevail on such a claim, a petitioner must show both that "'counsel's representation fell below an objective standard of reasonableness,' Strickland, 466 U.S., at 688, 104 S.Ct. 2052, and that there is a 'reasonable probability that, but for counsel's unprofessional

---

[44]St. Rec. Vol. 2 of 3, Trial Transcript, pp. 44-47, 5/23/07.

errors, the result of the proceeding would have been different,' Id., at 694, 104 S.Ct. 2052." Smith v. Spisak, __ U.S. __, 130 S. Ct. 676 (2010).

Poindexter suggests that counsel should have specifically pointed out in closing argument that the detective placed the bag of crack in his pocket to transport it to the station. He contends that counsel could have used this to suggest to the jury that there was no drug evidence at all. This argument does not follow the evidence or any logical progression of thought. His generalized allegations otherwise fail to disclose any real error or inadequacy in counsel's argument to the jury.

A reading of counsel's argument at trial reflects that he clearly and concisely summarized the testimony and evidence in an effort to point out to the jury the inconsistencies and improbabilities in the detective's version of the facts surrounding the discovery of the crack. "[D]eference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage . . . Judicial review of a defense attorney's summation is therefore highly deferential-and doubly deferential when it is conducted through the lens of federal habeas." Yarborough, 540 U.S. at 5-6. The record does not disclose any inadequacy in counsel's lengthy and detailed closing which would warrant further review by this habeas court. Poindexter has not demonstrated through his second-guessing, speculation and

hindsight that a change in the argument was necessary or that any such change would have altered the outcome of the case.

Poindexter further argues that counsel was deficient in failing successfully to obtain a mistrial when the detective testified at trial that a parole officer identified Blair Poindexter for him.  The record reflects that, in response to the prosecutor's questions, Detective Crochet testified that Poindexter had identified himself during the initial stop as "Johnny Poindexter," who was his brother.[45]  He further testified that, upon arrival at the Thibodaux Police Department, the following occurred:[46]

> While I was there, I received a call from Johnny Landry, who's probation and parole.  He told me that he received a call from a Johnny Poindexter, who Blair was claiming to be, stating that it was his brother that we had arrested and not Johnny himself.  And Agent Landry had came to the police department and looked at Blair and positively identified him as Blair at that time.

Defense counsel immediately approached the bench to voice his concern about the reference to Landry as being from probation and parole.[47]  Counsel noted that his reason for objecting to Crochet's comments was to avoid a mistrial.[48]  The court instructed counsel to clear it up on cross-examination.

---

[45]St. Rec. Vol. 2 of 3, Trial Transcript (continued), p. 179, 5/22/07.

[46]Id., p. 180.

[47]Id.

[48]Id., p. 181.

Counsel again objected when Crochet testified that Landry gave him Blair Poindexter's birth date and license number, creating an inference that the information was with Landry because of a connection with Blair and through probation and parole and/or that Poindexter had a prior conviction.[49]  Based on this conference, the court invited counsel to place his objection on the record at the next break outside of the presence of the jury.[50]

At the next break, defense counsel moved for a mistrial based on Crochet's reference to Agent Landry as an officer with probation and parole and his testimony that the identifying information was provided to him by Landry.[51]  He argued that this would prejudice the jury by insinuating that Blair Poindexter had a prior "charge and/or conviction, hence the probation and parole setting . . ."[52]  After considering the argument of counsel, the court denied the motion for mistrial pursuant to La. Code Crim. P. art. 775, finding that the remarks were not prejudicial.[53]

----

[49]Id., p. 186.

[50]Id., p. 187.

[51]Id., p. 278.

[52]Id.

[53]Under Louisiana law, to constitute impermissible other crimes or prior bad acts evidence, the evidence must unambiguously implicate the defendant in another crime.  State v. Edwards, 406 So.2d 1331, 1349 (La. 1981); State v. Holmes, 841 So.2d 80 (La. App. 4th Cir. 2003).

Poindexter has failed to present a basis for relief under federal habeas review based upon ineffective assistance of counsel.  At trial, his lawyer recognized the concern and presented argument in support of the motion for mistrial, but was unsuccessful.  The fact that counsel's efforts were not successful does not render his performance unconstitutionally deficient.  See Martinez, 99 Fed. Appx. at 543.  The same is true of the failed effort of appellate counsel, who raised the same unsuccessful claim on direct appeal.

Finally, Poindexter asserts that his appellate counsel was ineffective where she failed to raise "mountains of claims" and "many issues" on direct appeal.  He mentions, as examples, that his sentence was excessive, the record was filled with reasons for the motion to suppress to have been granted, and the trial court's failure to allow him to face the confidential informant. Poindexter has stated no basis in the state court record to support the merits of these claims or to demonstrate that the claims were worthy of raising on direct appeal.  In fact, Poindexter did not assert any of these claims on his own behalf, on appeal or on post-conviction review.  Poindexter has not shown a deficiency in or prejudice arising from counsel's actions as to any of these issues.

Poindexter's sentence is not excessive; he also was not sentenced as a second offender.  The trial court sentenced Poindexter as a first offender to serve 15 years in

prison.[54]  In stating its reasons in support of the sentence, the court noted that Poindexter

had three prior felony offenses, including drug convictions.[55]  There was no multiple bill

filed, and Poindexter was not sentenced as a second offender.

Federal courts accord broad discretion to a state trial court's sentencing decision

that falls within statutory limits.  Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987);

Turner v. Cain, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within

Louisiana statutory limits and within trial court's discretion, therefore petitioner failed

to state cognizable habeas claim for excessive sentence).  If a sentence is within the

statutory limits, a federal habeas court will not upset the terms of the sentence unless it

is grossly disproportionate to the gravity of the offense.  Harmelin v. Michigan, 501 U.S.

957 (1991); Solem v. Helm, 463 U.S. 277 (1983).  "[W]hen a threshold comparison of

the crime committed to the sentence imposed leads to an inference of 'gross

disproportionality,'" a court then considers (a) the sentences imposed on other criminals

in the same jurisdiction; and (b) the sentences imposed for commission of the same

offense in other jurisdictions.  Smallwood v. Johnson, 73 F.3d 1343, 1346-47 (5th Cir.

1996); McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).  As outlined above, the

Louisiana courts made this same comparison in considering Jones's sentence.

_____

[54]St. Rec. Vol. 1 of 3, Sentencing Transcript, p. 2, 6/14/07.

[55]Id., pp. 2-3.

Pursuant to La. Rev. Stat. Ann. § 40:967, Poindexter faced a penalty range of not less than two years nor more than 30 years, with the first two years of the sentence to be served without benefit of parole, probation, or suspension of sentence, and may be assessed a fine of not more than fifty thousand dollars. Poindexter's 15-year prison sentence was clearly within that range.

This sentence also was the same as or less than many sentences imposed for the same crime in the Louisiana courts. State v. Hunter, 41 So.3d 546 (La. App. 3d Cir. 2010) (20 years at hard labor); State v. Todd, No. 2009-KA-0430, 2009 WL 3155090, at *1 (La. App. 1st Cir. Sep. 1, 2009) (20 years at hard labor); State v. James, 975 So.2d 801 (La. App. 2d Cir. 2008) (20 years at hard labor); State v. Copelin, 974 So.2d 49 (La. App. 4th Cir. 2007) (15 years at hard labor after plea of guilty); State v. Wiley, 914 So.2d 1117 (La. App. 2d Cir. 2005) (20 years at hard labor). His sentence clearly was not disproportionate. There was no basis for counsel to raise this claim on appeal.

In addition, under Louisiana law, in instances where the statutory restrictions on parole, probation and suspension of sentence are not recited at sentencing, they are contained in the sentencing statute, and therefore are part of the sentence. La. Rev. Stat. Ann. § 15:301.1A; State v. Hall, 843 So.2d 488 (La. App. 4th Cir. 2003). Because the statute is self-activating, there was no basis for counsel to have raised an issue on appeal to address the trial court's failure to mention the parole restrictions.

Poindexter's general references to "reasons in the record" to have granted the motion to suppress do not provide this court with any basis to provide habeas relief. The motion to suppress was denied after a full evidentiary hearing, and Poindexter's Fourth Amendment rights were protected by that procedure. He has not presented any basis for counsel to have challenged the proceedings on appeal.

Poindexter's suggestion that counsel should have questioned the trial court's failure to allow him to confront the confidential informant fails to support habeas relief. As outlined above and as recognized by Poindexter, the motion to disclose the confidential informant was withdrawn.[56] There is nothing in this record to indicate that the trial court denied the motion. There is nothing, therefore, to indicate that counsel had a basis to raise such an issue on appeal.

Poindexter's general claims of ineffective assistance of counsel do not demonstrate constitutional deficiency by either trial or appellate counsel or any prejudice resulting from their performance. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of Strickland. Poindexter is not entitled to relief on this claim.

---

[56]St. Rec. Vol. 2 of 3, Motion Hearing Transcript, p. 3, 5/10/07.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Blair Poindexter for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[57]

New Orleans, Louisiana, this ____14th____ day of March, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[57]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

42